1  CROWELL & MORING LLP
   Christopher J. Banks, (Bar No. 218779)
2  CBanks@crowell.com
   3 Embarcadero Center, 26th Floor
3  San Francisco, CA 94111
   Tel:   415.986.2800
4  Fax:   415.986.2827

5  MORGAN, LEWIS & BOCKIUS LLP
   Andrew P. Frederick, Bar No. 284832
6  andrew.frederick@morganlewis.com
   1400 Page Mill Road
7  Palo Alto, CA  94304
   Tel:     +1.650.843.4000
8  Fax:    +1.650.843.4001

9  MORGAN, LEWIS & BOCKIUS LLP
   Nicole L. Antonopoulos, Bar No. 306882
10 nicole.antonopoulos@morganlewis.com
   Miranda M. Rowley, Bar No. 328173
11 miranda.rowley@morganlewis.com
   One Market, Spear Street Tower
12 San Francisco, CA 94105-1126
   Tel:     +1.415.442.1000
13 Fax:    +1.415.442.1001

14 Attorneys for Defendants
   ICON CLINICAL RESEARCH LLC; DOCS
15 GLOBAL, INC.; and ICON PLC

16            UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18               SAN FRANCISCO DIVISION

19

20 CHRYSTAL L. MILLER, individually and on    Case No. 4:21-cv-07431-YGR
   behalf of all others similarly situated,
21                                            **FIRST AMENDED CROSS-**
                Plaintiff(s),                 **COMPLAINT OF ICON CLINICAL**
22                                            **RESEARCH LLC AGAINST**
           v.                                 **CHRYSTAL L. MILLER FOR:**
23
   ICON PLC, LYNDA HOLCROFT, DOCS             **1.  FRAUD – INTENTIONAL**
24 GLOBAL, INC., ICON CLINICAL                    **MISREPRESENTATION**
   RESEARCH LLC, and DOES 1 - 100,
25                                            **2.  FRAUD – CONCEALMENT**
                Defendants.
26                                            **3.  NEGLIGENT**
   AND RELATED CROSS-CLAIMS.                      **MISREPRESENTATION**
27
                                              **4.  BREACH OF CONTRACT**
28
                                              **DEMAND FOR JURY TRIAL**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**FIRST AMENDED CROSS-COMPLAINT**

2       Defendant and Cross-Complainant ICON Clinical Research LLC ("ICON Clinical" or

3  "the Company") hereby brings this amended cross-complaint for damages and disgorgement

4  against Plaintiff and Cross-Defendant Chrystal L. Miller ("Cross-Defendant" or "Miller") and

5  alleges as follows:

6                                    **NATURE OF THE ACTION**

7       1.      Miller is a former employee of ICON Clinical who worked as a Clinical Research

8  Associate ("CRA") II in California from October 2017 until March 2019, when ICON Clinical

9  terminated her employment with the Company.  During her employment, Miller repeatedly

10 defrauded the Company through inaccurate, misleading, forged, and fabricated expense reports,

11 time recording entries, and clinical study monitoring logs.  Examples of Miller's fraudulent

12 conduct include:  (a) resubmitting expenses for which the Company had previously reimbursed

13 her by falsely attributing those expenses to a different clinical study; (b) forging and fabricating

14 receipts, including those for Lyft rides and hotel stays; (c) misrepresenting the number of days

15 she traveled for work so that she would receive additional per diem reimbursements; and (d)

16 misrepresenting the days and/or hours she physically spent on site at clinical studies.  Miller

17 engaged in this fraudulent conduct in connection with at least sixty separate expense reports and

18 with these reports Miller submitted hundreds of fabricated, forged, and/or misleading ride share

19 receipts, hotel receipts, and travel itineraries.

20      2.      Miller's fraudulent conduct caused extensive damage to ICON Clinical, including

21 injuring its relationship with an important, existing client.  Following an oversight visit conducted

22 by this client, the client determined that there was potential for significant adverse impact to study

23 data quality due to potential anomalies regarding factual documentation of monitoring visits by

24 Miller, mandating the client to carry out a full investigation into this.  An investigation of this

25 nature was required as any such findings can adversely affect study timelines, delay a clinical trial

26 from moving to the next phase or affect the accuracy of the findings at the relevant sites, which

27 could potentially compromise patient safety.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1                                    DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

3.       ICON Clinical had to invest significant sums of money to repair this relationship and ensure that Miller had not compromised the validity of various clinical studies. Because of Miller's fraudulent expense report submissions and misleading and inaccurate clinical monitoring log entries, $101,394.39 was refunded to this client on ICON Clinical's behalf, which represented the total amount reflected in Miller's expense report submissions for the clinical studies at issue. ICON Clinical incurred additional costs in the approximate amount of $103,629.77 stemming from the Company's quality review of the clinical studies on which Miller had worked and the Company's investigation, upon the request of the client, into anomalies associated with her clinical monitoring log entries and expense report submissions.

4.       ICON Clinical brings this action seeking damages against Miller in the amount of at least $205,024.16. In addition, ICON Clinical seeks pre- and post-judgment interest, costs, and punitive damages.

## THE PARTIES

5.       Defendant and Cross-Complainant ICON Clinical is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, doing business in the State of California.

6.       Plaintiff and Cross-Defendant Chrystal Miller previously worked for ICON Clinical in California and based upon Miller's averments in the Complaint she is a resident of California. ICON Clinical employed Miller from October 9, 2017, until March 19, 2019, when the Company terminated her employment.

## JURISDICTION

7.       This Court has subject matter jurisdiction over these proceedings pursuant to the general jurisdiction granted by the California Constitution.

8.       This Court possesses personal jurisdiction over Cross-Defendant and venue is proper because Miller initiated the pending action in this Court.

///

///

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF FACTS

### ICON Clinical's Business

9.      ICON Clinical is a Clinical Research Organization ("CRO") that provides outsourced development services to the pharmaceutical, biotechnology, and medical device industries.  ICON Clinical specializes in the strategic development, management, and analysis of programs that support all stages of the clinical development process from compound selection to Phase I-IV clinical studies.  ICON Clinical contracts with pharmaceutical, biotechnology, and medical device companies to provide these companies with clinical development support.

10.      ICON Clinical employs CRAs who, among other responsibilities, identify, select, initiate, and close out appropriate investigational sites for clinical studies and monitor those sites to ensure the validity and quality of the clinical study data.  CRAs regularly travel to monitor clinical study sites.

### ICON Clinical's Time-Recording & Expense Report Submission Requirements

11.      On September 27, 2017, Miller signed an offer letter to work for ICON Clinical as a CRA II.  In accepting ICON Clinical's job offer, Miller agreed to abide by the Company's policies and expectations, which included submitting accurate expense reports and behaving honestly in connection with all work-related activities, and to comply with all applicable laws.  In her signed offer letter, Miller agreed as follows: "You warrant and represent at all times during your employment with the Employer that you shall . . . comply at all times with all employee policies, SOPs, and procedures of the Employer including, but not limited to, the Employer's policy prohibiting . . . violation of applicable laws in the course of performing services for the Employer."  The ICON Clinical Handbook provides as follows:  "At ICON, we are committed to our core values of Accountability & Delivery, Collaboration, Partnership, and Integrity in everything we do.  Meeting these values requires us all to work to the highest ethical standards and demonstrate a commitment to honesty, transparency, and quality.  In order to consistently maintain our core values we must abide by all applicable laws, standards, rules and regulations when carrying out our duties on behalf of ICON."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

12.    ICON Clinical required Miller to record accurately the amount of time she spent on work for ICON Clinical and to document accurately any time spent on clinical studies and at clinical sites.  ICON Clinical also required Miller to follow the Company's travel policy and only seek reimbursement for expenses that Miller actually incurred.

13.    Miller was well aware of these requirements, and was warned by ICON Clinical to comply with them when she was found to have violated ICON Clinical's requirements in 2018. That year, Miller was disciplined for her repeated use of unapproved travel sites to book her work travel.  When booking hotel reservations for work-related travel, Miller had been using websites that were not authorized by ICON Clinical.  Miller's conduct negatively affected her study teams' budgets and resulted in hotel expenses considerably higher than what ICON Clinical's policy allowed.  Thus, on September 5, 2018, ICON Clinical issued Miller a written warning for her repeated failure to follow the Company's travel policy.  ICON Clinical directed Miller to book all travel, including airfare, hotels, and rental cars, through its approved vendor, World Travel/Concur.  On September 20, 2018, Miller signed the written warning and agreed that all expense reports she submitted going forward would comply with ICON Clinical's travel policy.

**Plaintiff's Failure to Document Site Monitoring Visits Accurately**

14.    In January 2019, one of ICON Clinical's key clients began to become concerned about Miller's late arrival times at client sites for monitoring visits, her failure to complete certain action items during or after her visits, and inaccuracies in confirmation and follow-up letters issued by Miller after visits.  One of the client's sites even considered instituting a sign-in and sign-out sheet just to capture Miller's arrival and departure times; the client was concerned that Miller was not accurately documenting the number of days spent conducting monitoring visits at the site (*i.e.*, Miller was reporting visiting the site on certain days when she in fact had not been there).

15.    On February 19, 2019 and February 20, 2019, the client conducted an oversight visit of two studies that Miller monitored in Seattle, Washington.  Miller had been scheduled to monitor the studies on January 29 and 30, 2019.  Although Miller visited the site on January 29,

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

1    2019, she canceled the second day of the site visit indicating to the site that a second day was not

2    needed.  However, on the monitoring log, Miller reported that she *was* at the test site for both

3    days (January 29 and 30, 2019), even though she had only been there on January 29, 2019.

4         16.    On March 1, 2019, ICON Clinical issued a final writing warning to Miller for

5    ongoing performance-related issues.  The warning noted that, when conducting monitoring visits,

6    Miller was expected to be on site for a full-work day (8 hours) unless the site limited the number

7    of hours that could be spent there.  Sites where Miller conducted monitoring visits had noted that

8    Miller often arrived late and left early, even though Miller recorded full day visits in her

9    timesheets, trip reports, and ICOTrial.  The warning also documented that Miller had conflicting

10   timesheets and data entries within ICOTrial.  Miller had shown two site visits on the same day

11   and in other instances full days for studies were recorded in ICOTrial while Miller's timesheets

12   did not show any time for those studies or only a few hours.

13        17.    During a meeting on March 5, 2019, between the client, Miller's supervisor

14   Katrina Becher, and Miller, Miller admitted that she was not on site on January 30, 2019, even

15   though she had recorded that she was on site that day.  Miller also admitted that there were other

16   instances where she had indicated being on site when in fact she was not there and still other

17   instances where she reported arriving on time at the site but had actually arrived late.

18        18.    ICON Clinical discussed these events further with Miller after completing a

19   preliminary review of monitoring visit-related information from ICOTrial, ICON's Clinical Trial

20   Management System, trip reports, and follow-up letters to sites.  ICON Clinical also conducted

21   interviews with sites where issues were noted.  For visits where the visit log indicated a two-day

22   visit when the visits were actually completed in one day, Miller indicated that the entries in the

23   logs reflected the day on site as well as a follow-up remote visit.  However, Miller failed to

24   indicate when the remote visit was conducted.  Some of the sites interviewed noted that Miller

25   arrived late and did not spend sufficient time on site.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

19.     On March 14, 2019, ICON Clinical further learned based on additional review that Miller had falsely recorded being on site at other clinical sites when she was in fact not there.  As such, the client requested that Miller be removed from working on any clinical studies.

20.     Because of Miller's ongoing performance issues, including the client's request that she be removed from clinical studies on which she was working, ICON Clinical terminated Miller's employment on March 19, 2019.

21.     Due to the issues with her monitoring visit logs and time entries, ICON Clinical reviewed these records in conjunction with the travel expenses and travel invoices she submitted. ICON Clinical identified countless issues with Miller's expense reports, including instances where Miller submitted the same expense for reimbursement twice, instances where Miller doctored receipts for hotel stays and transportation and reused them for the purposes of obtaining further reimbursement, and instances where the information in the expense reports Miller submitted had significant inconsistencies.

22.     Because of Miller's fraudulent expense report submissions and misleading and inaccurate clinical monitoring log and time entries, $101,394.39 was refunded to this client on ICON Clinical's behalf by ICON Clinical Research Limited.  This amount was later charged back to ICON Clinical as the proper entity to account for the loss.  $101,394.39 represented the total amount reflected in Miller's expense report submissions for the clinical studies at issue.

23.     Additionally, Miller's conduct triggered a Significant Quality Event ("SQE") review for the client because of concerns that studies she had been responsible for monitoring may have been compromised or negatively affected.  In connection with this SQE review, ICON Clinical incurred additional costs in the approximate total amount of $103,629.77.  Specifically, the CRAs who replaced Miller on the clinical studies at issue had to check on critical items relating to Miller's work to assess whether there were other issues with Miller's previous monitoring visits, such as scientific misconduct, which cost ICON Clinical approximately $20,375.  These critical checks were crucial as any such scientific misconduct could adversely affect the health of patients.  ICON Clinical also invested substantial time comparing Miller's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

1   expense receipts against clinical site visit information, which cost ICON Clinical approximately

2   $32,089.77.  The SQE review also involved numerous internal meetings at ICON Clinical and

3   meetings with the client, which cost ICON Clinical approximately $51,165.

4                    **Examples of Miller's Fraudulent Expense Reporting**

5            **Submission of Same Expense Report Twice for Double Reimbursement**

6        24.    On numerous occasions, Miller submitted the same expense report twice for

7   double reimbursement.  Miller would submit the expense report to Approver A for approval using

8   one study and site code.  Months later, Miller would then submit the exact same expense report

9   for the exact same amount with the exact same location and dates, but with just the study/site

10   code and expense report number changed.  She would submit this duplicate expense report to

11   Approver B for approval.  Approver B did not know this expense report had already been

12   approved (though with a different site code and expense report number) and so Miller would be

13   reimbursed for the same amount again having already been reimbursed for the expenses she

14   previously reported incurring.

15       25.    For example, on October 31, 2018, Miller submitted an expense report requesting

16   reimbursement in connection with a site visit she purportedly completed on October 4, 2018 in

17   San Antonio, Texas.  Based on Miller's representations in this expense report, ICON Clinical paid

18   Miller $1,215.52 to reimburse her for claimed work-related expenses.  Then, on January 2, 2019,

19   Miller submitted the same expense report for reimbursement again but represented that her

20   expenses related to a different study.  The receipts Miller submitted with her expense reports on

21   October 31, 2018 and January 2, 2019 are identical.  As a result, ICON Clinical paid Miller

22   $1,215.52 again for expenses for which she previously claimed reimbursement and for which

23   ICON Clinical had reimbursed her.  Miller's fraudulent expense submission therefore caused

24   ICON Clinical to pay Miller $1,215.52 that she did not actually incur in expenses and to which

25   she was not otherwise entitled.

26       26.    Miller engaged in the same fraudulent behavior again in February 2019.  On

27   January 31, 2019, Miller submitted an expense report requesting reimbursement in connection

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

1  with a site visit she purportedly completed on January 29, 2019 in Seattle, Washington. Based on

2  Miller's representations in this expense report, ICON Clinical paid Miller $1,629.36 to reimburse

3  her for claimed work-related expenses. Then, on February 22, 2019, Miller submitted the same

4  expense report for reimbursement again but represented that her expenses related to a different

5  study. The receipts Miller submitted with her expense reports on January 30, 2019 and February

6  22, 2019, are identical. As a result, ICON Clinical paid Miller $1,629.36 again for expenses for

7  which she previously claimed reimbursement and for which ICON Clinical had reimbursed her.

8  Miller's fraudulent expense submission therefore caused ICON Clinical to pay Miller $1,629.36

9  that she did not actually incur in expenses and to which she was not otherwise entitled.

10                      **Miller's Submission of and Reimbursement for Forged Receipts**

11        27.      On numerous occasions, Miller submitted and received reimbursement for

12  fabricated or forged Lyft and hotel receipts.

13        28.      For example, not only did Miller seek and obtain double reimbursement for her

14  Seattle, Washington trip at the end of January 2019, but she also submitted, in the original

15  reimbursement request, a forged hotel receipt, forged Lyft receipts, and an outdated and

16  misleading travel itinerary and misrepresented the number of days she spent in Seattle.

17        29.      Previously, at the end of October 2018, Miller had conducted a site visit in Seattle.

18  With the expense report she submitted for that Seattle trip, Miller included a hotel receipt for a

19  two-night stay at the Silver Cloud Hotel Stadium in the amount of $873.26. Except for doctoring

20  the dates of the stay on the receipt, Miller submitted the exact same hotel receipt with her expense

21  report for her January 2019 trip reflecting that she purportedly stayed in Seattle the night of

22  January 29 and January 30. The room number, reservation number, folio number, and booking

23  number on the hotel receipts were the exact same. Upon information and belief, ICON Clinical

24  alleges that reservation, folio, and booking numbers are unique numbers that should be different

25  for each stay at a hotel. Attached as **Exhibit A** is a true and correct copy of the hotel receipt that

26  Miller submitted with the expense report for her October 2018 trip to Seattle and attached as

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

**Exhibit B** is a true and correct copy of the hotel receipt that Miller submitted with the expense report for her January 2019 trip to Seattle.

30.    In addition, with her expense report, Miller misleadingly submitted a travel itinerary dated January 19, 2019, that showed Miller flying to Seattle on January 29 and leaving on January 31.  However, on the morning of January 29, 2019, Miller changed her itinerary to a one-night hotel stay at the Silver Cloud Hotel – Broadway and changed her departure flight from January 31 to January 30.  Miller knowingly failed to submit her finalized travel itinerary with her expense report to lead ICON Clinical to believe that she had taken a three-day trip to Seattle with a two-night hotel stay, when in fact she had only taken a two-day trip with a one-night hotel stay. Miller later admitted as part of the SQE review that she only spent January 29, 2019, on site in Seattle and not January 30, 2019.

31.    Moreover, the finalized travel itinerary for the late January Seattle trip reflects that Miller stayed at the Silver Cloud Hotel – Broadway, not the Silver Cloud Hotel Stadium, as she falsely stated on her forged hotel receipt.  These hotels are located at two different locations in Seattle about two miles apart.  The Silver Cloud Hotel – Broadway is located at 1100 Broadway, Seattle, WA 98122 and the Silver Cloud Hotel Stadium is located at 1046 1st Avenue South, Seattle, WA 98134.

32.    Miller spent $169 for a one-night stay at the Silver Cloud Hotel – Broadway hotel on January 29, 2019.  Yet, she sought and received $873.26 by falsely claiming that she stayed at the Silver Cloud Hotel Stadium for two nights.  Miller therefore fraudulently obtained $704.26 from ICON Clinical through her fabricated hotel receipt for the Silver Cloud Hotel Stadium.  In addition, by falsely reporting that she went on a three-day trip instead of a two-day trip, Miller received $57.50 in per diems to which she was not otherwise entitled.

33.    Miller also forged her Lyft receipts for her Seattle trip in January 2019 by resubmitting the same receipts from her October 2018 trip to Seattle, except for a change in dates. For example, Miller's purported ride from the "Silver Cloud Hotel" to the "SEA Airport"

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

allegedly cost exactly $59.50 on both October 31, 2018, and January 31, 2019.[1]  Miller also was
supposedly picked up by a Lyft ride at exactly 12:33 p.m. on both days.  Similarly, Miller's ride
from "LAX Airport" to her address in Los Angeles cost exactly $72.80 on both October 31, 2018,
and January 31, 2019.[2]  Miller also was supposedly picked up by a Lyft ride at exactly 8:33 p.m.
on both days.  Attached as **Exhibits C** and **D**, respectively, are true and correct copies of the
purported Lyft receipts that Miller submitted with her expense reports for her October 2018 and
January 2019 trips to Seattle.

34.    Not even accounting for the fabricated Lyft receipts, Miller, through her double
expense report submission, fabricated hotel receipt, and misrepresentation of trip length,
fraudulently induced ICON Clinical to pay her $2,391.12 in claimed expenses that she did not
actually incur during her January 2019 Seattle trip.

**Miller's False Reporting of Multiple Night Hotel Stays**

35.    On numerous occasions, as already described in connection with her trip to Seattle
in 2019 above, Miller reported and sought reimbursement for multiple night stays at hotels even
though she only stayed a single night at these locations.

36.    For example, Miller traveled to Tulsa, Oklahoma, for a monitoring visit at the end
of January 2018.  In connection with this trip, Miller requested and received reimbursement for
$380 for a reported two-night stay at the Ambassador Hotel in Tulsa.  However, Miller's flight
itinerary shows that she traveled to Tulsa on January 30, 2018, not January 29, 2018, as
represented in her expense report.  Lyft receipts also show Miller was in Los Angeles until
January 30.  In addition, Miller's "out of office" email message states that Miller was "traveling
and conducting monitoring visits from 30Jan2018 to 31Jan2018."  As such, Miller falsely sought
and received reimbursement in the amount of $190 for a purported stay at the Ambassador Hotel
in Tulsa on January 29 even though she did not stay there that night.

[1] As discussed above, Miller was not in Seattle on January 31, 2019, so she could not have taken a Lyft ride on that day in Seattle in any event.

[2] The October 31, 2018 Lyft receipt is also fabricated because on October 31, 2018, Miller was in New York, not Los Angeles, as shown by multiple Lyft receipts in Miller's ICON inbox.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

37.     A week later Miller traveled to San Antonio, Texas, for another site monitoring visit.  Miller represented on her expense report that she was in San Antonio for two nights from February 6 – 8, 2018, to conduct a site visit, and requested reimbursement for hotel costs for two nights.  Because of Miller's representation on her expense report, ICON Clinical reimbursed Miller for a two-night stay in San Antonio and paid her $325.  However, Miller's World Travel invoice and itinerary as well as her actual Lyft receipts, which she did not submit with her expense report, show that Miller was only in San Antonio from February 6 to February 7, 2018 – not February 8, 2018.  In addition, Miller falsely reported staying at the Hotel Contessa for $162.50 per night, while in fact she stayed at the Hilton San Antonio Airport hotel for $126.09 the single night she was in San Antonio.  One of Miller's actual Lyft receipts shows she was picked up from the San Antonio Airport at 11:40 pm and dropped off at the Hilton San Antonio Airport hotel at 11:50 pm.  Miller's Hilton San Antonio Airport hotel receipt shows she checked in two minutes later at 11:52 pm and checked out the following day, February 7, 2018.  In addition, as with basically all her expense reports, Miller doctored her Lyft receipts, which were dated 2017. The pick-up and drop-off times and the mileage traveled during the Lyft trip had been removed from the receipts.  Miller sought and received reimbursement in the amount of $22.60 for her purported ride from the San Antonio Airport to the Hotel Contessa, when she actually only spent $11.92 on a ride from the airport to the Hilton San Antonio Airport hotel.  Similarly, Miller's actual Lyft receipt for her travel to the Los Angeles Airport on February 6, 2018, shows that she only incurred $14.72 in Lyft expenses, not $53.80 as reflected on the falsified Lyft receipt she submitted for reimbursement.  Because of Miller's false expense reporting in connection with her February 2018 San Antonio trip, ICON Clinical overpaid Miller by at least $248.67.

38.     Similarly, Miller sought reimbursement for a purported site monitoring trip to San Diego from November 19 - 21, 2018 in the amount of $1,419.42 for Lyft rides, a two-night hotel stay, and per diems.  However, Miller did not travel to San Diego during those dates.  Instead, she flew from Los Angeles to San Francisco on November 20, 2018, and visited a study site in San

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

Francisco as her actual Lyft ride receipts, actual travel itinerary, and study site visit documentation confirm.  As such, Miller fabricated the Lyft ride and hotel receipts that she submitted with her expense report for this purported San Diego trip.  Based on Miller's false representations, ICON Clinical paid her $1,149.42 for expenses she did not incur and to which she was not otherwise entitled.

## FIRST CLAIM FOR RELIEF

### (FRAUD – INTENTIONAL MISREPRESENTATION)

39.    ICON Clinical incorporates by reference the allegations contained in paragraphs 1 through 38, inclusive, as though set forth fully herein.

40.    An individual commits civil fraud or intentional misrepresentation when she makes a knowingly false representation, intends to deceive or induces reliance on the misrepresentation, the affected party reasonably relies on the misrepresentation, and the affected party suffers resulting damages.  *Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal. App. 4th 1807, 1816.

41.    Miller knowingly made false representations to ICON Clinical through inaccurate, misleading, and fabricated and forged expense reports, time recording entries, and clinical study monitoring logs.  Miller's representations to ICON Clinical of the expenses that she incurred, the time she spent working, and the time she spent at study sites were false and she knew that these representations were false when she made them or she made them recklessly and without regard for their truth.  Miller intended for ICON Clinical to rely on her fraudulent expense reports, time recording entries, and clinical study monitoring logs so that the Company would pay her reimbursement amounts beyond expenses she had actually incurred in connection with her work for ICON Clinical.  Miller's intent to deceive ICON Clinical is evidenced by, among other things, her double submission of expense reports, fabrication and forging of Lyft and hotel receipts, and submission of outdated travel itineraries.  Miller further understood that ICON Clinical relied upon the expense reports she submitted to reimburse her and that if her expense reports were inaccurate then the reimbursement amount would be inaccurate.  ICON Clinical requires its

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

employees to act honestly in their dealings with the Company and to follow company policies, including submitting accurate expense reports, time recording entries, and clinical study monitoring logs. ICON Clinical reasonably relied upon the information Miller submitted to its detriment.

42. Miller's intentional misrepresentations were a substantial factor in causing ICON Clinical harm. ICON Clinical reimbursed Miller for at least $71,241.52 in claimed expenses that she did not in fact incur and through this action ICON Clinical seeks to recover these monies that Miller fraudulently induced the Company to pay her. In addition, Miller's fraudulent conduct which called into question all of her expense report submissions caused not only this $71,241.52 to be refunded on ICON Clinical's behalf to the client for whom Miller was conducting site monitoring, but also $30,152.87 in additional expenses that Miller submitted and for which she received reimbursement. Therefore, as a consequence of Miller's unlawful conduct, ICON Clinical suffered damages in the amount of $101,394.39.

43. ICON Clinical incurred additional costs in the approximate amount of $103,629.77 stemming from the Company's quality review of the clinical studies on which Miller had worked and its investigation into anomalies associated with her clinical monitoring log entries and expense report submissions. Specifically, the CRAs who replaced Miller on the clinical studies at issue had to check on critical items relating to Miller's work to assess whether there were other issues with Miller's previous monitoring visits, which cost ICON Clinical approximately $20,375. ICON Clinical also invested substantial time comparing Miller's expense receipts against clinical site visit information, which cost ICON Clinical approximately $32,089.77. Furthermore, the SQE review involved numerous internal meetings at ICON Clinical and with the client, which cost ICON Clinical approximately $51,165.

44. Miller's fraudulent conduct caused damages to ICON Clinical in the amount of at least $205,024.16, and ICON Clinical seeks to recover this principal amount in this action. In addition, ICON Clinical seeks pre- and post-judgment interest and costs.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

45.    ICON Clinical also seeks punitive and exemplary damages sufficient to punish Miller for engaging in the above-described fraudulent conduct and to deter similar conduct on her part in the future.

## SECOND CLAIM FOR RELIEF

### (FRAUD – CONCEALMENT)

46.    ICON Clinical incorporates by reference the allegations contained in paragraphs 1 through 45, inclusive, as though set forth fully herein.

47.    In addition to intentional misrepresentations Miller made to ICON Clinical, Miller also knowingly and intentionally failed to disclose certain facts to ICON Clinical, such as changes in travel itineraries and the fact that she did not stay at certain hotels, which would have shown that the claimed expenses she sought were not legitimate.  Miller's deliberate concealment of these facts was a substantial factor in causing harm to ICON Clinical.

48.    ICON Clinical reimbursed Miller for at least $71,241.52 in claimed expenses that she did not in fact incur and through this action ICON Clinical seeks to recover these monies that Miller fraudulently induced the Company to pay her.  In addition, Miller's fraudulent conduct which called into question all of her expense report submissions caused not only this $71,241.52 to be refunded on ICON Clinical's behalf to the client for whom Miller was conducting site monitoring but also $30,152.87 in additional expenses that Miller submitted and for which she received reimbursement.  Therefore, as a consequence of Miller's unlawful conduct, ICON Clinical suffered damages in the amount of $101,394.39.

49.    ICON Clinical incurred additional costs in the approximate amount of $103,629.77 stemming from the Company's quality review of the clinical studies on which Miller had worked and its investigation into anomalies associated with her clinical monitoring log entries and expense report submissions.  Specifically, the CRAs who replaced Miller on the clinical studies at issue had to check on critical items relating to Miller's work to assess whether there were other issues with Miller's previous monitoring visits, which cost ICON Clinical approximately $20,375.  ICON Clinical also invested substantial time comparing Miller's expense receipts

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

against clinical site visit information, which cost ICON Clinical approximately $32,089.77. Furthermore, the SQE review involved numerous internal meetings at ICON Clinical and with the client, which cost ICON Clinical approximately $51,165.

50.    Miller's fraudulent conduct caused damages to ICON Clinical in the amount of at least $205,024.16, and ICON Clinical seeks to recover this principal amount in this action.  In addition, ICON Clinical seeks pre- and post-judgment interest and costs.

51.    ICON Clinical also seeks punitive and exemplary damages sufficient to punish Miller for engaging in the above-described fraudulent conduct and to deter similar conduct on her part in the future.

### THIRD CLAIM FOR RELIEF

### (NEGLIGENT MISREPRESENTATION)

52.    ICON Clinical incorporates by reference the allegations contained in paragraphs 1 through 51 inclusive, as though set forth fully herein.

53.    Alternatively, if Miller did not engage in intentional misrepresentation and fraudulent concealment, ICON Clinical alleges that Miller negligently misrepresented that she incurred certain business expenses when in fact she did not incur those expenses.  Miller had no reasonable grounds for believing the representations were true when she made them given that she made double expense reimbursement submissions, fabricated and forged Lyft receipts and hotel receipts, and did not even go on certain trips for which she sought reimbursement.  Miller intended that ICON Clinical rely upon her representation of her claimed expenses so that it would pay her for expenses she reported.  ICON Clinical reasonably relied on Miller's representations of her work-related expenses, time spent working, and time spent on site at clinical studies.

54.    Miller's negligent misrepresentation of her expense reports harmed ICON Clinical in that ICON Clinical paid Miller for expenses she did not incur and ICON Clinical's reliance on Miller's representation of her expenses was a substantial factor in causing it harm.  ICON Clinical reimbursed Miller for at least $71,241.52 in claimed expenses that she did not in fact incur and through this action ICON Clinical seeks to recover these monies that Miller fraudulently induced

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

1    the Company to pay her.  In addition, Miller's fraudulent conduct which called into question all

2    of her expense report submissions caused not only this $71,241.52 to be refunded on ICON

3    Clinical's behalf to the client for whom Miller was conducting site monitoring but also

4    $30,152.87 in additional expenses that Miller submitted and for which she received

5    reimbursement.  Therefore, as a consequence of Miller's unlawful conduct, ICON Clinical

6    suffered damages in the amount of $101,394.39.

7         55.    ICON Clinical incurred additional costs in the approximate amount of $103,629.77

8    stemming from the Company's quality review of the clinical studies on which Miller had worked

9    and its investigation into anomalies associated with her clinical monitoring log entries and

10   expense report submissions.  Specifically, the CRAs who replaced Miller on the clinical studies at

11   issue had to check on critical items relating to Miller's work to assess whether there were other

12   issues with Miller's previous monitoring visits, which cost ICON Clinical approximately

13   $20,375.  ICON Clinical also invested substantial time comparing Miller's expense receipts

14   against clinical site visit information, which cost ICON Clinical approximately $32,089.77.

15   Furthermore, the SQE review involved numerous internal meetings at ICON Clinical and with the

16   client, which cost ICON Clinical approximately $51,165.

17        56.    Miller's fraudulent conduct caused damages to ICON Clinical in the amount of at

18   least $205,024.16, and ICON Clinical seeks to recover this principal amount in this action.  In

19   addition, ICON Clinical seeks pre- and post-judgment interest and costs.

20        57.    ICON Clinical also seeks punitive and exemplary damages sufficient to punish

21   Miller for engaging in the above-described fraudulent conduct and to deter similar conduct on her

22   part in the future.

23                          **FOURTH CLAIM FOR RELIEF**

24                          **(BREACH OF CONTRACT)**

25        58.    ICON Clinical incorporates by reference the allegations contained in paragraphs 1

26   through 57 inclusive, as though set forth fully herein.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

59.    In accepting ICON Clinical's job offer, Miller agreed to abide by the Company's policies and expectations, which included Miller agreeing to behave honestly in all her dealings with the Company and submitting accurate expense reports, time entries, and site monitoring visit logs, and to comply with all applicable laws.  ICON Clinical satisfied its obligations with respect to Miller by paying her the amount it agreed to for the work she performed as a CRA II.  However, by defrauding the Company, Miller broke her agreement that she would comply with all applicable laws, behave honestly in all her dealings with the Company, and that she would submit accurate expense reports, time entries, and site monitoring visit logs.  Miller therefore entirely failed to uphold her end of the bargain.

60.    Miller's breach of her agreement with ICON Clinical proximately caused the Company to suffer damages in the amount of at least $205,024.16.  Miller reasonably could have foreseen that the Company would be damaged by her actions because she induced the Company to pay for claimed expenses that she did not actually incur.  Furthermore, Miller understood the importance of accurately recording her time on site visits and associated data with those visits because ICON Clinical and its client relied upon that information to ensure the quality and validity of clinical studies.  Miller therefore reasonably could have foreseen that by submitting inaccurate time and site monitoring logs ICON Clinical and its client would have to take remedial action to ensure that clinical studies had not been compromised.

61.    ICON Clinical seeks to recover at least $205,024.16 in damages resulting from Miller's breach of her employment agreement with the Company.  In addition, ICON Clinical seeks pre- and post-judgment interest and costs.

## PRAYER FOR RELIEF

NOW, THEREFORE, ICON Clinical prays for relief as follows:

1.    For judgment in favor of ICON Clinical and against Miller on ICON Clinical's causes of action in this First Amended Cross-Complaint;

2.    For the principal sum of at least $205,024.16 on ICON Clinical's causes of action;

3.    For pre- and post-judgment interest at the legal rate on the principal sum on ICON

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

1    Clinical's causes of action;

2            4.        For exemplary and punitive damages in an amount to be determined at trial;

3            5.        For disgorgement of Miller's ill-gotten gains;

4            6.        For costs of suit incurred herein; and

5            7.        For such other relief as the Court may deem proper.

6

7    Dated: March 29, 2022                    MORGAN, LEWIS & BOCKIUS LLP
                                              CROWELL & MORING LLP
8

9

10                                     By
                                              Christopher J. Banks
11                                            Andrew P. Frederick
                                              Nicole L. Antonopoulos
12                                            Miranda M. Rowley

13                                            Attorneys for Defendants
                                              ICON CLINICAL RESEARCH LLC;
14                                            DOCS GLOBAL, INC.; and ICON PLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

1

## **DEMAND FOR JURY TRIAL**

2          ICON Clinical hereby demands a jury trial on all causes of action and claims with respect

3    to which it has a right to a jury trial.

4

5    Dated: March 29, 2022                              MORGAN, LEWIS & BOCKIUS LLP
                                                        CROWELL & MORING LLP
6

7                                                       By_____

8                                                          Christopher J. Banks
                                                           Andrew P. Frederick
9                                                          Nicole L. Antonopoulos
                                                           Miranda M. Rowley
10
                                                        Attorneys for Defendants
11                                                      ICON CLINICAL RESEARCH LLC,
                                                        DOCS GLOBAL, INC., and ICON PLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANT ICON CLINICAL'S
FIRST AMENDED CROSS-COMPLAINT
Case No. 4:21-cv-07431-YGR

# EXHIBIT A

Silver Cloud Hotel Stadium

1046 1st Ave South

Seattle, Washington 98134

October 31, 2018                                                                                          Page 1 of 1

Chrystal Miller                                    **Guest Information:**

Redacted                                           Room:                    118
                                                   Reservation #:           9281266
Los Angeles, CA 90028                              Folio #:                 8117276
                                                   Visit From:              29-Oct-2018 to 31-Oct-2018
                                                   Booking #:               71247141

| Date | Reference | Description | Unit | Currency | Credit | Charge |
|------|-----------|-------------|------|----------|--------|--------|
| 29-Oct-2018 | NITAUD | Room Charge | 322 | $ | 0.00 | 409.00 |
| 30-Oct-2018 | NITAUD | Room Charge | 322 | $ | 0.00 | 409.00 |
| 31-Oct-2018 | | State Tax | | | | 57.26 |
| 31-Oct-2018 | VISAVS - 2277 | | | **Totals:** | **0.00** | **873.26** |
| | | | | **Folio Balance:** | **0.00** | |

For more information on Club please call 1-877-DRI Club, or 1-877-374-2582
Please follow us on Facebook by becoming a Fan

# EXHIBIT B

Silver Cloud Hotel Stadium

1046 1st Ave South

Seattle, Washington 98134

January 31, 2019                                                      Page 1 of 1

Chrystal Miller                          **Guest Information:**

Redacted                                 Room:                118

                                         Reservation #:       9281266
Los Angeles, CA 90028                    Folio #:             8117276

                                         Visit From:          29-Jan-2019 to 31-Jan-2019

                                         Booking #:           71247141

| Date | Reference | Description | Unit | Currency | Credit | Charge |
|------|-----------|-------------|------|----------|--------|--------|
| 29-Jan-2019 | NITAUD | Room Charge | 322 | $ | 0.00 | 409.00 |
| 30-Jan-2019 | NITAUD | Room Charge | 322 | $ | 0.00 | 409.00 |
| 30-Jan-2019 | | State Tax | | | | 57.26 |
| 31-Jan-2019 | VISAVS - 2277 | | | **Totals:** | **0.00** | **873.26** |
| | | | | **Folio Balance:** | **0.00** | |

For more information on Club please call 1-877-DRI Club, or 1-877-374-2582
Please follow us on Facebook by becoming a Fan

# EXHIBIT C



9:17 PM
October 29, 2018

**Ride Details**

| Lyft fare | $59.50 |
|---|---|

| VISA Visa *2277 | $59.50 |
|---|---|

● Pickup
SEA Airport Seattle, WA

● Dropoff
Silver Cloud Hotel  Seattle, WA

Thanks for riding!

10:07 PM

October 29, 2018

**Ride Details**

lyft

| | |
|---|---|
| Lyft fare | $34.70 |

| | |
|---|---|
| VISA Visa *2277 | $34.70 |

- Pickup
  Silver Cloud Hotel  Seattle, WA

- Dropoff
  Red Lobster Seattle, WA

Thanks for riding!

10:47 PM
October 29, 2018

**Ride Details**

lyft

| | |
|---|---|
| Lyft fare | $35.70 |
| VISA Visa *2277 | $35.70 |

● Pickup
Red Lobster Seattle, WA

● Dropoff
Silver Cloud Hotel  Seattle, WA

## Thanks for riding!

8:09 AM
October 30, 2018

**Ride Details**



| | |
|---|---|
| Lyft fare | $65.90 |

| | |
|---|---|
| VISA  Visa *2277 | $65.90 |

● Pickup
Silver Cloud Hotel  Seattle, WA

● Dropoff
MultiCare Institute for Research Seattle, WA

Thanks for riding

12:07 PM
October 30, 2018

**Ride Details**



| | |
|---|---|
| Lyft fare | $25.90 |

| | |
|---|---|
| VISA Visa *2277 | $25.90 |

• Pickup
MultiCare Institute for Research Seattle, WA

• Dropoff
Trejos Tacos  Seattle, WA

Thanks for riding!

12:57 PM
October 30, 2018

**Ride Details**

lyft

| | |
|---|---|
| Lyft fare | $25.90 |

| | |
|---|---|
| VISA Visa *2277 | $25.90 |

- Pickup
  Trejos Tacos  Seattle, WA

- Dropoff
  MultiCare Institute for Research Seattle, WA

## Thanks for riding!

6:29 PM
October 30, 2018

**Ride Details**

| | |
|---|---|
| Lyft fare | $63.50 |

| | |
|---|---|
| VISA Visa *2277 | $63.50 |

- Pickup
  MultiCare Institute for Research Seattle, WA

- Dropoff
  Silver Cloud Hotel  Seattle, WA

Thanks for riding!

8:14 PM
October 30, 2018
**Ride Details**

lyft

| | |
|---|---|
| Lyft fare | $33.70 |

| | |
|---|---|
| VISA Visa *2277 | $33.70 |

- Pickup
  Silver Cloud Hotel  Seattle, WA

- Dropoff
  Cheesecake Factory Seattle, WA

Thanks for riding!

9:49 PM
October 30, 2018

**Ride Details**

lyft

| | |
|---|---|
| Lyft fare | $35.70 |

| | |
|---|---|
| VISA Visa *2277 | $35.70 |

• Pickup
Cheesecake Factory Seattle, WA

• Dropoff
Silver Cloud Hotel  Seattle, WA

# Thanks for riding!

12:33 PM
October 31, 2018

**Ride Details**

**lyft**

| | |
|---|---|
| Lyft fare | $59.50 |

| | |
|---|---|
| VISA Visa *2277 | $59.50 |

- Pickup
  Silver Cloud Hotel  Seattle, WA

- Dropoff
  SEA Airport Seattle, WA

Thanks for riding!

8:33 PM
October 31, 2018

**Ride Details**

| Lyft fare | $72.80 |
|---|---|

| VISA Visa *2277 | $72.80 |
|---|---|

- Pickup
  LAX Airport  Los Angeles, CA

- Dropoff
  Redacted  Harold Way Los Angeles, CA

# EXHIBIT D

## Thanks for riding!

3:17 PM

January 29, 2019

**Ride Details**

Lyft

| | |
|---|---|
| Lyft fare | $70.80 |

| | |
|---|---|
| VISA Visa *2277 | $70.80 |

● Pickup
Redacted Harold Way Los Angeles, CA

● Dropoff
LAX Airport  Los Angeles, CA



9:17 PM

January 29, 2019

**Ride Details**

| Lyft fare | $59.50 |

| VISA Visa *2277 | $59.50 |

● Pickup
SEA Airport Seattle, WA

● Dropoff
Silver Cloud Hotel  Seattle, WA

Thanks for riding!

10:07 PM
January 29, 2019

**Ride Details**



| Lyft fare | $34.70 |
|---|---|

|  Visa *2277 | $34.70 |
|---|---|

● Pickup
Silver Cloud Hotel  Seattle, WA

● Dropoff
Red Lobster Seattle, WA

**Thanks for riding!**

10:47 PM

January 29, 2019

**Ride Details**

**lyft**

| | |
|---|---|
| Lyft fare | $35.70 |
| VISA Visa *2277 | $35.70 |

● Pickup
Red Lobster Seattle, WA

● Dropoff
Silver Cloud Hotel  Seattle, WA

Thanks for riding!

8:09 AM
January 30, 2019
**Ride Details**

| | |
|---|---|
| Lyft fare | $65.90 |

| | |
|---|---|
| VISA Visa *2277 | $65.90 |

**Pickup**
Silver Cloud Hotel  Seattle, WA

**Dropoff**
MultiCare Institute for Research Seattle, WA

12:07 PM

January 30, 2019

**Ride Details**



| | |
|---|---|
| Lyft fare | $25.90 |

| | |
|---|---|
| VISA Visa *2277 | $25.90 |

Pickup
MultiCare Institute for Research Seattle, WA

Dropoff
Trejos Tacos  Seattle, WA

Thanks for riding!

12:57 PM

January 30, 2019

**Ride Details**

lyft

| | |
|---|---|
| Lyft fare | $25.90 |

---

| | |
|---|---|
| VISA Visa *2277 | $25.90 |

- Pickup
  Trejos Tacos  Seattle, WA

- Dropoff
  MultiCare Institute for Research Seattle, WA

## Thanks for riding!

6:29 PM

January 30, 2019

**Ride Details**

Lyft

| | |
|---|---|
| Lyft fare | $63.50 |

| | |
|---|---|
| VISA Visa *2277 | $63.50 |

- Pickup
  MultiCare Institute for Research Seattle, WA

- Dropoff
  Silver Cloud Hotel Seattle, WA

Thanks for riding!

8:14 PM
January 30, 2019

**Ride Details**

lyft

| | |
|---|---|
| Lyft fare | $33.70 |

| | |
|---|---|
| VISA Visa *2277 | $33.70 |

• Pickup
  Silver Cloud Hotel  Seattle, WA

• Dropoff
  Cheesecake Factory Seattle, WA

Thanks for riding!

8:14 PM

January 30, 2019

**Ride Details**

lyft

| | |
|---|---|
| Lyft fare | $33.70 |

| | |
|---|---|
| VISA Visa *2277 | $33.70 |

- Pickup
  Silver Cloud Hotel  Seattle, WA

- Dropoff
  Cheesecake Factory Seattle, WA

## Thanks for riding!

12:33 PM
January 31, 2019

**Ride Details**

**lyft**

| | |
|---|---|
| Lyft fare | $59.50 |
| VISA Visa *2277 | $59.50 |

● Pickup
Silver Cloud Hotel  Seattle, WA

● Dropoff
SEA Airport Seattle, WA

## Thanks for riding!

8:33 PM
January 31, 2019

**Ride Details**

| Lyft fare | $72.80 |
|---|---|

| VISA Visa *2277 | $72.80 |
|---|---|

● Pickup
LAX Airport  Los Angeles, CA

● Dropoff
Redacted  Harold Way Los Angeles, CA